Argued and submitted April 21, reversed July 26, 1995

In the Matter of the Compensation of
Kerment C. Verner, DCD, Claimant.
## LIBERTY NORTHWEST
## INSURANCE CORPORATION
and Glenbrook Nickel Co.,
*Petitioners,*

*v.*

Barcy VERNER,
Beneficiary of
Kerment C. Verner, Deceased,
*Respondent.*

(WCB 93-10270; CA A85511)

899 P2d 751

E. Jay Perry argued the cause for petitioners. With him on the brief was Employers Defense Counsel.

James L. Edmunson argued the cause for respondent. With him on the brief was Malagon, Moore, Johnson & Jensen.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

**WARREN, P. J.**

Employer seeks review of an order of the Workers' Compensation Board that awarded death benefits to claimant's beneficiary. We reverse.

Claimant worked at an ore processing plant. In March 1993, he died at work and his beneficiary requested workers' compensation benefits. On the day he died, claimant and other workers were required to remove heavy equipment from a large ore dryer. The area in which claimant worked was approximately 80 to 85 degrees. A leaky propane hose caused an unpleasant odor in the dryer.

After claimant had worked for awhile, he complained about having indigestion, nausea and chest pains. He and the other workers took a 30-minute break and then resumed working. About 45 minutes later, claimant's supervisor left the plant to purchase beverages for the crew. At that time, he noticed that claimant appeared weak and that his face was sweating. After the supervisor returned, he gave claimant and the other workers a sports drink.

Shortly after claimant consumed his beverage, he became ill and asked to leave the ore dryer. A few minutes later, claimant vomited. The supervisor told his superintendent about claimant's illness. The superintendent told claimant that he should go home or seek medical help. Claimant refused. He then took his lunch break. A few minutes later, the superintendent observed him vomiting again. When claimant's break ended, at about 10:30 a.m., the superintendent again asked him whether he would like to go home. Claimant declined. The superintendent then assigned him to light duty work, which required claimant to note the time ore trucks arrived at and departed from the plant. Claimant was last seen alive at about 12:30 p.m. A short while later, a worker found him seated, partially reclined, in a stairwell. Medics pronounced him dead at the scene. The Coos County Coroner briefly examined claimant's body, but did not perform an autopsy. He listed the cause of death as "undetermined."

Claimant's beneficiary filed a claim for compensation, which employer denied. At the hearing, the principal issue was medical causation. The evidence at the hearing on

that issue consisted of two written reports and the testimony of claimant's expert witness, a pathologist. There was evidence that the coroner, after reviewing the death investigation reports and other records, could not determine the cause of death to a degree of medical probability. Similarly, a cardiologist who reviewed all of the records could not establish a cause of death with reasonable medical probability. However, the pathologist opined that claimant had died from cardiovascular collapse. His hypothesis was that the combination of excessive heat, physical exertion and the odor from the hose caused claimant to become nauseous, which lead to vomiting, fluid loss, electrolyte imbalance and, ultimately, death. Later, the referee awarded death benefits to claimant's beneficiary and the Board affirmed.

On appeal, we address only employer's assignment that the Board erred in concluding that the claim was compensable, because it is dispositive. The referee concluded that the pathologist's opinion about claimant's death being work-related was "well-reasoned and based on a correct history" and awarded benefits to claimant's beneficiary. The Board adopted the referee's findings and conclusions. Employer argues that there is insufficient evidence to support a finding of compensability, because the pathologist's opinion about causation was based on assumptions that were contrary to facts adduced at the hearing.

The pathologist testified that he reached his opinion about the cause of claimant's death before the hearing.[1] He based that opinion on numerous assumptions.[2] One of those assumptions was that claimant had been working in temperatures of 110 degrees or greater. In the pathologists's opinion, that was a factor that led to claimant's nausea and, ultimately, caused him to die. The pathologist testified that, standing alone, neither odors, exertion nor excessive heat caused claimant's death. His opinion about the cause of claimant's death was predicated on the *combination* of all three factors.

---

[1] The fact that the workers were briefly exposed to an odor of propane was elicited for the first time at the hearing.

[2] For example, the pathologist assumed that claimant did not or could not consume any fluids from the last time that he was observed vomiting, which was about 10:00 a.m., until the time he was found dead, more than three hours later.

There is no evidence, however, that claimant worked in temperatures of 110 degrees or greater. The evidence is that the portion of the ore-dryer in which claimant worked was between 80 and 85 degrees. The pathologist testified that those temperatures were not excessive. Therefore, in the absence of any evidence that claimant worked in excessive heat, one of the factors on which the pathologist based his opinion about claimant's death did not exist.

The pathologist did not suggest, nor is there any evidence from which the Board could infer, that the combination of odors and exertion alone caused claimant to become ill and die. The pathologist's testimony is dependant on assumptions that are not supported by the record. Accordingly, the Board's determination that claimant's death was caused by work conditions is not supported by substantial evidence.

Reversed.