Argued and submitted February 24, affirmed April 16, petition for review denied June 17, 1997 (325 Or 438)

In the Matter of the Compensation of
Kerment C. Verner, Deceased, Claimant.

## LIBERTY NORTHWEST INSURANCE CORPORATION
and Glenbrook Nickel Co.,
*Petitioners,*

*v.*

Barcy VERNER,
Beneficiary of Kerment C. Verner, Deceased,
*Respondent.*

(93-10270; CA A93921)

936 P2d 1036

E. Jay Perry argued the cause and filed the brief for petitioners.

Dale C. Johnson argued the cause for respondent. With him on the brief was Malagon, Moore, Johnson & Jensen.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Employer seeks review of a Workers' Compensation Board (Board) order on remand, *Liberty Northwest Ins. Corp. v. Verner*, 139 Or App 165, 911 P2d 948 (1996) (*Verner II*), holding that decedent's claim is compensable. The dispositive issue is whether substantial evidence supports the Board's finding that decedent worked in temperatures of 110 degrees or greater on the day that he died. We affirm.

On the day of his death, decedent was assigned to remove heavy equipment from an ore dryer. After lifting and carrying the equipment for approximately two and one-half hours, decedent became nauseated and had to stop working in the dryer. He was reassigned to light duty and died a few hours later.[1] Claimant's expert, Dr. Hamilton, testified that a combination of an unpleasant odor, heavy physical exertion and heat caused decedent to become ill and nauseated, resulting in a loss of fluids, a severe imbalance in his electrolytes, and the collapse of his cardiovascular system. Hamilton's opinion was based on his understanding that decedent had been exposed to "excessive heat," meaning temperatures of 110 degrees or greater.

The Board determined that the claim was compensable. On review, we reversed, holding that there was not evidence in the record to support Hamilton's assumption that decedent had been working in temperatures of 110 degrees or greater and that the area in which decedent worked "was between 80 and 85 degrees." *Liberty Northwest Ins. Corp. v. Verner*, 135 Or App 551, 555, 899 P2d 751 (1995) (*Verner I*). The Supreme Court, *citing Garcia v. Boise Cascade Corp.*, 309 Or 292, 787 P2d 884 (1990), vacated and remanded the case for reconsideration. *Liberty Northwest Ins. Corp. v. Verner*, 322 Or 214, 904 P2d 171 (1995). On remand, we held that the Board had not explained why it had accepted Hamilton's opinion regarding cause of death in the light of the finding that decedent had been exposed to temperatures of only 80 to 85 degrees, which, according to Hamilton, did not constitute

---

[1] A full exposition of the facts appears in *Liberty Northwest Ins. Corp. v. Verner*, 135 Or App 551, 899 P2d 751 (1995) (*Verner I*).

"excessive heat." *Verner II*, 139 Or App at 169. We remanded to the Board for that explanation.

The Board reviewed the record and, based on the testimony of decedent's supervisor, Lawson, found that:

> "Dr. Hamilton's recollection of [Lawson's] testimony was consistent with [Lawson's] testimony. [Lawson] testified that the temperature where decedent was working on March 31, 1993 ranged from 60 to 110 degrees or higher, depending on the part of the dryer where decedent was working. Although [Lawson] testified that when [decedent] started complaining about being nauseous, that area was approximately 80 to 85 degrees, [Lawson] testified that the temperature would change depending on where the person was in the dryer. Because decedent was removing lifters and carrying them, he was exposed to the temperature variations in the dryer. Based on [Lawson's] testimony, we conclude that Dr. Hamilton's opinion was based on an accurate assumption that decedent was exposed to temperatures of 110 degrees or higher on March 31, 1993." (Underscoring in original; citations omitted.)

■■ In its first assignment of error, employer contends that there is not substantial evidence in the record to support a finding that the temperature to which decedent was exposed ranged from 60 to 110 degrees or greater. It argues that "[t]he evidence is that the portion of the ore-dryer where [d]ecedent worked had a temperature between 80-85°." At oral argument, employer also contended that under "the law of the case," we are bound by our holdings in *Verner I* and *II* that "one of [Hamilton's] basic assumptions [that decedent was exposed to temperatures greater than 110 degrees] is without evidentiary support." *Verner II*, 139 Or App at 168-69. *See Verner I*, 135 Or App at 555 ("There is no evidence * * * that [decedent] worked in temperatures of 110 degrees or greater.").

Claimant responds that there is substantial evidence in the record to support the Board's finding that decedent was exposed to temperatures of 110 degrees or greater and that we are not bound by our holdings in *Verner I* and *II*, because only the order now on review analyzes the evidence about the temperature to which decedent was exposed on the day that he died.

 On review of an order of the Board, we are not to substitute our judgment for that of the Board as to any issue of fact or to set aside any finding that is supported by substantial evidence. *Garcia*, 309 Or at 295; *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988). If the Board's finding is reasonable, in the light of countervailing as well as supporting evidence, the finding is supported by substantial evidence. *Garcia*, 309 Or at 295.

Our holdings in *Verner I* and *II* were based on our review of the Board order in effect at that time. Our holdings in *Verner I* and *II* did not preclude the Board on remand from reviewing the record and making the findings of fact that appear in the order now on review. That order contains a finding that decedent was exposed to temperatures ranging from 60 to 110 degrees or greater. Substantial evidence supports that finding.

Lawson testified that the dryer had been heated to approximately 1800 degrees the night before and then allowed to cool overnight, that decedent began working at 6:00 a.m, an hour before Lawson arrived, and that the temperature at the location where decedent started complaining, over two hours after he started work, was approximately 80 to 85 degrees. Lawson also testified that "depending on where you were at and where you were working," the temperature "was up around 110—maybe even a little hotter up there." Lawson's testimony is evidence from which the Board found that decedent was exposed to temperatures ranging from 60 to 110 degrees or greater while working in the dryer on the day that he died.

Employer's second assignment of error is that the Board failed to provide a rational connection between the facts that it found and its conclusion that Hamilton's opinion about the cause of decedent's death was reliable and persuasive. The Board's order demonstrates that it weighed the medical evidence and explains why it concluded that Hamilton's opinion provided a "more than reasonable medical probability" about the cause of decedent's death.

Affirmed.